HOFFMANN-LA ROCHE CHEMICAL WORKS, Inc., v. MORGANSTERN
& CO., Inc.

(Circuit Court of Appeals, Second Circuit. May 29, 1922.)

No. 290.

1. Courts ☞292—District Court's jurisdiction of suits under trade-mark laws not dependent on diversity of citizenship.

Under Judicial Code, § 24(7), being Comp. St. § 991, the District Court's jurisdiction of suits under trade-mark laws is not dependent on diversity of citizenship.

2. Trade-marks and trade-names and unfair competition ☞59(5)—Sale of product made in other country under trade-mark of concern doing business in this country held an infringement of the trade-mark.

Where foreign concern registered its trade-mark in the United States Patent Office, and sold its product under such trade-mark in the United States, and thereafter assigned its right to such trade-mark and the right to sell its product under such name in the United States to the plaintiff, and where the plaintiff thereafter manufactured such product in the United States and sold it in this country under such trade-mark, the plaintiff was entitled to an injunction restraining the defendant from selling in this country under such trade-mark a similar preparation manufactured in the foreign country by a concern other than the plaintiff's assignor; the sale of such product by the defendant constituting an infringement of plaintiff's trade-mark.

3. Equity ☞65(2)—Trade-marks and trade-names and unfair competition ☞85(1)—One who is deceiving public not entitled to injunction.

A concern engaged in deceiving the public will not be granted an injunction restraining another concern from impairing its trade-mark, not being entitled to relief, because its hands are not clean.

Appeal from the District Court of the United States for the Southern District of New York.

Action by the Hoffmann-La Roche Chemical Works, Inc., against Morganstern & Co., Inc. Judgment for defendant, and plaintiff appeals. Reversed.

Hans v. Briesen and Fred A. Klein, both of New York City, for appellant.

Dunn, Goodlett, Massie & Scott, of New York City (Clifford E. Dunn, C. A. L. Massie and John M. Cole, all of New York City, of counsel), for appellee.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before ROGERS, MANTON, and MAYER, Circuit Judges.

ROGERS, Circuit Judge. This case arises under the trade-mark laws of the United States, and is brought for an infringement of the plaintiff's rights in its trade-mark. The court below denied the plaintiff's motion for a preliminary injunction.

[1] Both parties to this litigation are citizens of the state of New York, but jurisdiction of the subject-matter of this suit is not dependent on diversity of citizenship. Under Judicial Code, § 24 (7), being Comp. St. § 991, the District Courts have jurisdiction of all suits under the trade-mark laws.

In June, 1904, the firm of F. Hoffmann-La Roche & Co., of Basle, Switzerland, adopted as a trade-mark for a certain preparation for treating diseases of the heart the term "Digalen," and in the same month it commenced the sale of such preparation in the markets of the United States, and marked all containers wherein the said preparation was contained with the trade-mark "Digalen." It sold its product under this name also throughout England, France, and the German Empire. This product of the Swiss firm attained a very wide sale and was recognized as superior to other similar preparations on the market. On October 25, 1904, it registered its said trade-mark in the United States Patent Office, and a trade-mark certificate No. 43593 was issued to it on the said date.

On May 25, 1910, the aforesaid firm by an instrument in writing sold and assigned to the Hoffmann-La Roche Chemical Works, a corporation organized under the laws of the state of New York and the plaintiff herein, its entire right, title, and interest in and to the said trade-mark "Digalen" and to the said trade-mark registration therefor and the good will appertaining thereto, which instrument was recorded in the United States Patent Office on May 26, 1910. Thereafter the plaintiff carried on the business in the United States, which previously had been carried on by the firm of F. Hoffmann-La Roche & Co., and continued to sell the aforesaid preparation in the same manner as it had been previously carried on by the firm of F. Hoffmann-La Roche.

The product which is alleged to infringe, and which is sold by the defendant under the name "Digalen," is not manufactured or compounded by it but is a foreign product. It is not, however, made by the plaintiff's assignor, the Swiss firm of F. Hoffmann-La Roche & Co. But it is made in Germany by the Chemische Werke Grenzach Aktiengesellschaft. The German concern was founded in 1916, during the war, as a German company, by a German syndicate controlled by the Disconto-Gesellschaft. Its own publications show that it is an independent enterprise and a competitor of the Swiss firm of F. Hoffmann-La Roche & Co.

The fact that the Swiss firm of F. Hoffmann-La Roche & Co. owned and operated a plant at Grenzach, Germany, and there manufactured Digalen, and in 1916 sold its plant to the German corporation, transferring to it its entire German business, including physical assets, patents, trade-marks, and good will "in so far as the empire of Germany was concerned," and that the infringing product was thereafter manufactured by this new German corporation, does not appear to us to be

of controlling significance in the present case. The fact remains that the product which the defendant bought and imported into the United States was not manufactured by the Swiss firm, and does not, upon the label attached, purport to be the genuine product of that firm; neither is there anything upon it which informs the public that its manufacturer is even the successor of that firm. Whatever the rights of the German manufacturer in Germany may be as between it and the Swiss firm, whatever the rights resulting from the contract may be as between the parties to it in Germany, one who purchases from the German manufacturer is not thereby enabled to bring into the markets of the United States a product which the label shows is manufactured by the German manufacturer and have it accorded exactly the same recognition which we might feel compelled to accord it if it had been manufactured by the Swiss firm originally entitled to the use of the trademark affixed thereto.

The infringing product was bought by the defendant in the open market in Germany, from a jobber, and was imported by the defendant into this country and sold in the same condition and with the same label as when put up and sold by the German manufacturer. The label on the German product has conspicuously printed upon it the trademark name, "Digalen." At the bottom of the label appear in much smaller type the words "Chemische Werke Grenzach A. G. Grenzach (Baden)." While the plaintiff's bottle has similarly placed upon it the trade-mark, "Digalen," and at the bottom the words "The Hoffmann-La Roche Chemical Works, New York."

The plaintiff's bottle has on the label the words "Alcohol 7½%— 1Cc (16 min.) contains 0.3 mgr. Digitoxinum soluble Cloetta." The defendant's bottle has on the label "Digitoxinum soluble Cloetta."

The plaintiff's bottle has on it the following:

"DOSAGE: Dose per os. 8 to 32 minims three times a day. If injected intravenously powerful results may be obtained with a dose of 15 mms. in from 2 to 5 minutes. Only in exceptional cases will it be necessary to repeat this dose after one or two hours."

The defendant's bottle contains no reference to dosage.

Digalen, it appears, is a medicinal preparation which is prescribed by physicians for the treatment of heart disease, and it is used so generally that in one of the affidavits submitted to the court below it is said that "it is used in practically every hospital in this country and in the government services." It is used as an heroic measure in extreme cases of heart failure, and in such cases is generally injected intravenously. A remedy so used must be pure, sterile, and prepared with the greatest care and precaution. It is a poison, and should be administered according to standard dosage, which dosage the plaintiff has always printed on its containers or bottles. The physician regulates the amount of Digalen that is to be administered to the patient according to his knowledge of the patient's condition, but the minimum and maximum dosage recommended by the plaintiff on its labels are relied upon by physicians in giving the prescription.

Digalen in the United States means one thing—the plaintiff's product. A product made in Germany, which is brought into this country and

sold under the trade-mark of the plaintiff, which deceives the public, and is sold here because of the established reputation of the plaintiff's product, is an infringement of the plaintiff's trade-mark.

The court below was presented with the affidavit of a chemist who for the past 25 years had been employed in that capacity by one of the largest wholesale drug houses in the United States, and who had graduated at one of the English colleges and was a member of the Pharmaceutical Society of Great Britain, as well as of the American Pharmaceutical Association and of various other chemical and pharmaceutical societies. His statement was:

"Our concern has been handling Digalen for more than 10 years supplying it to druggists on their orders. The term 'Digalen' has been, as long as I am familiar with the preparation, known and recognized as the trade-mark of the Hoffmann-La Roche Chemical Works and all orders for Digalen are filled with the preparation put up by the Hoffman-La Roche Chemical Works. * * * Digalen has an exceedingly good reputation as a carefully and skillfully prepared preparation, and the trade and druggists and physicians generally know that the skill and reputation of the Hoffmann-La Roche Chemical Works stand behind it. In filling orders for Digalen we only know and recognize the Hoffmann-La Roche Chemical Works as the manufacturer of the preparation, and we rely upon their reputation for its purity and effectiveness."

He was shown the defendant's package, which is alleged to infringe, and his statement as to it was:

"The appearance of packages like said 'Exhibit E' on the market would lead the trade, physicians and druggists, in my opinion, to believe that the preparation contained in the vial was the output of the Hoffmann-La Roche Chemical Works inasmuch as Digalen is recognized as the trade-mark of the Hoffmann-La Roche Chemical Works."

And in an affidavit by one who is a Doctor of Science of the University of Edinburgh in the Department of Chemistry, and who has devoted his life to analytical and manufacturing chemistry with particular reference to pharmaceutical products, it is said that—

"Digalen in the United States has but one meaning, to wit, a product marketed by this plaintiff, and this has been the situation ever since 1910."

The year referred to is, as we have seen, the year of the assignment of the trade-mark by F. Hoffmann-La Roche & Co., of Switzerland, to the plaintiff, which trade-mark had been registered in the United States Patent Office in 1904, when a trade-mark certificate was duly issued.

[2] It is quite clear that the defendant could not compound his preparation in the United States and put upon it his label "Digalen" without infringing the plaintiff's rights; and if defendant compounded his preparation in Germany, and placed the same trade-mark on his product, it is equally clear that he would infringe, if he undertook to sell it in this country, or in any market elsewhere in which the plaintiff's product had previously become known and identified by the use of the mark. Hanover Milling Co. v. Metcalf, 240 U. S. 403, 416, 36 Sup. Ct. 357, 60 L. Ed. 713. Is it less of an infringement because the defendant bought the product in Germany of a German manufacturer, who commenced to manufacture it in that country in 1916, and placed the same

mark upon it, and then brought it to this country, where he put it upon the market in competition with the plaintiff's product?

The court below, in denying the motion for the injunction, which the plaintiff herein seeks, and in vacating the restraining order which had been granted, stated that he was controlled by the decision of this court in Bourjois v. Katzel, 275 Fed. 539. In that case this court decided that the importation and sale in the United States of an article made in a foreign country, bearing the trade-mark under which it is known and sold in the country where made, and also in this country, is not an infringement of the American trade-mark on the same imported article, though that is owned by a competitor. The plaintiff in that case was a New York corporation, and had bought the entire business then being carried on in the United States by A. Bourjois & Cie., E. Wertheimer & Cie., Successours of France, and any and all trade-marks and trade-mark rights relating thereto in the United States, and also the sole and exclusive right to manufacture and sell in the United States any and all toilet preparations then or theretofore made by the French concern. The defendant thereafter bought abroad genuine boxes or packages of face powder put up by the French firm, brought it to this country, and resold it here in the foreign producer's package, which bore a trade-mark substantially identical with the United States trade-mark. In that case this court, overruling the court below, held that this did not involve infringement of the American trade-mark. The court said:

"The analogy between patents and trade-marks is not complete. A patent gives the patentee a monopoly to make, sell and use, and grant to others the right to make, sell, and use the subject patented in the United States for the term of the patent. Hence articles lawfully made, used, and sold in foreign countries cannot be sold in this country if they infringe the patent. Trademarks, on the other hand, are intended to show without any time limit the origin of the goods they mark, so that the owner and the public may be protected against the sale of one man's goods as the goods of another man. If the goods sold are the genuine goods covered by the trade-mark, the rights of the owner of the trade-mark are not infringed."

The doctrine thus announced established the law for this circuit and is binding upon us in a like case, unless we overrule it. That case is now before the Supreme Court upon a writ of certiorari. There is no good reason, therefore, why this court should undertake to review the doctrine which this court announced in that case. Moreover, a deliberate decision of this court is not ordinarily to be reconsidered because of changes in the membership of the court. We fully agree with the statement of Judge Cooley in McCutcheon v. Common Council of Homer, 43 Mich. 483, 5 N. W. 668, 38 Am. Rep. 212, that it would be mischievous in a high decree to permit the reopening of controversies every time a new judge takes his place in the court, thereby encouraging speculation as to the effect of such changes upon principles previously announced.

We are, however, not inclined to extend the doctrine of Bourjois v. Katzel, so as to make it applicable to the facts now before the court. We think that the present case is distinguishable from Bourjois v. Katzel, supra. In that case the powder which the plaintiff sold in the United States was bought from the manufacturer in France, and was

sold in this country as the product of the French manufacturer. The goods of the plaintiff in that case emanated from the same source, were manufactured by the same concern, and were announced by the American trade-mark proprietor as being the actual product manufactured by the European house and sold by the European manufacturer in European markets under the same trade-mark.

In the case now before the court the plaintiff's product is compounded, not in France, but in the United States, and it is sold under a label which does not indicate or suggest in any way that the product is of foreign manufacture, or of any other manufacture than that of the plaintiff, and the product has acquired a reputation on the American market as the product of the plaintiff. In Bourjois v. Katzel the goods which the plaintiff sold had not acquired any reputation on the American market as the product of the plaintiff. Its sole reputation was that of the foreign manufacturer, from which manufacturer both the plaintiff's goods and the defendant's goods alike emanated. The two cases are very different in their facts, and Bourjois v. Katzel is without application to the present case. Digalen is an American product. It has a reputation of its own in the markets of the United States.

[3] The defendant seeks to prevent the issuance of an injunction by asserting that the plaintiff is not entitled to relief because its hands are unclean. If the plaintiff's hands are unclean, and it is engaged in deceiving the public, it would not be entitled to invoke the aid of a court of equity in its favor. But the defense of unclean hands is not made out.

We know of no reason why the trade-mark which the plaintiff registered under the acts of Congress should not be given the full protection for which the plaintiff asks.

The order is reversed.